## Ringo, *et al. vs* Warder, &c.

CHANCERY.

*Case* 110.

ERROR TO THE FLEMING CIRCUIT.

*Bills of review. Parties. Femes covert.*

*June.* 19.

The case stated.

JUDGE MARSHALL delivered the opinion of the Court.

THE case of *Dennis* vs *Warder, &c.;* (3 *B. Monroe,* 173,) in which a judgment in ejectment in favor of War-der, the plaintiff, was reversed by this Court, is referred to for a statement .of the preliminary facts of the present case, and of the nature of Warder's claim. It now ap-pears that before the reversal of that judgment, Warder entered upon the possession of the land in contest, of which.he claimed one fifth as the share of his wife in the estate descended from her father, Moses Moss; and that upon a bill filed by him against the devisees of Nelly Moss, who had purchased the same land from the execu-tor of said Moses, he obtained a decree setting apart one fifth of the tract to him by metes and bounds, and also for rents, against the devisees of Nelly Moss, and a

purchaser from them. To review and reverse this de-
cree, and to obtain a release of the title of Warder and
wife, are the principal objects of the present consolidated
suits, in which by the original, and amended, and cross
bills, all the devisees and the purchaser above referred
to unite.

Among other errors assigned in the bill of review, it is
alledged that Mrs. Warder, whose interest Warder claims,
should have been made a party, but was not, and that
upon the pleadings and evidence in the case, he was en-
titled to no decree. The subsequent reversal of the
judgment in ejectment, and the equity growing out of the
fact that Warder and wife stood by and permitted the sale
by the executor, to Nelly Moss, and delivered the pos-
session to her and received the benefit of the sale in the
occupation of another tract of land purchased with a part
of the proceeds, and conveyed to Kendall Moss, for the
separate use of Mrs. Warder, are specifically set up and
relied upon. And the case is made out, that while Mrs.
Warder enjoys the benefit of the land purchased for her
by her share in the proceeds of the tract now in contest,
her husband, from whom, on account of ill treatment, she
has separated, holds one fifth of the land in contest as her
interest therein, by descent from her father, and in op-
position to the sale of the latter tract by the executor, in
which he and his wife had long acquiesced, and of which
they had both had, and the wife still has the benefit.
And it also appears that by the decree sought to be re-
viewed, he obtained rents for the tract now in dispute,
for the same years during which he occupied the other
tract, after having expelled his wife therefrom.

Mrs. Warder, by her answer in the present case, filed
without oath or privy examination, professes a willingness
to confirm the sale by the executor, of the land now in
contest, fearing that if that sale be defeated, the settle-
ment of the other tract upon her and her children, may
be endangered, or at least that they may be made liable
to damages. But Warder resists the equity set up in the
bill, on the ground that his acquiescence in the sale by
the executor, of the land now in contest, was caused by
a mistake under which all parties labored, that this land,

Rinoo; et al.
vs
Warder, &c:

Decree of the Chancellor.

A complainant asking equity will be required first to do equity.

which was acquired after the date of the will of Moses Moss, was subject to the power of sale therein conferred on the executor.

The Chancellor was of opinion that Warder was not estopped from asserting title to the land; because of the common mistake with regard to the power of the executor, and gave relief no farther than by reducing the amount of rents as formerly decreed, and perpetually enjoining the collection of the excess.

It may be true that there was a common mistake or delusion among all parties interested, with regard to the power of the executor to sell the land in question. But if the fact that Warder's acquiescence in the sale under this common delusion; should prevent a decree against him for a title, we are inclined to think this acquiescence, coupled with the fact that the proceeds of the sale went to the benefit of himself and his wife, through whom alone he claims title, should preclude him from all claim to the aid of a Court of Equity in establishing his claim, or any right growing out of it in opposition to the sale, unless it were against persons who had deceived him. And even if his claim were not absolutely precluded in equity, it could only be entertained there upon the terms of his complying, on his part, with the principle of equity which would require him to make compensation to the extent of the loss which he might impose by the assertion of title in opposition to the sale which he had encouraged. He has intimated no offer or willingness to do this; and it seems certain that he had no equity in favor of his claim to rents from the land now in contest, for the time during which he was enjoying the other tract which had been purchased with the proceeds of his and his wife's interest in this.

The bill for a partition and for rents, refers to and incorporates with it the record of the ejectment case as it existed when it was brought to this Court, and on which the Court said that Warder might be estopped in equity though not at law; and there was no suggestion either in the suit for a division or in the ejectment case, that Warder's acquiescence in the executor's sale, was occasioned by ignorance or mistake as to his rights. Upon

the face of his bill and exhibits, which showed all the facts adverse to his right, he was asserting a title which he could not assert in equity, and claiming relief contrary to justice and good conscience. The answers filed in that case make no objection to a division, and say nothing as to rents. But looking to the character and relative condition of the defendants, we are not satisfied that the answers should be regarded as sufficient to authorize a decree to which the complainant, on his own showing, had no right, since the consent or waiver of objection to the partition, seems to be conditional, except in the answer of the infant defendants, purporting to be filed by a guardian *ad litem*, of whose appointment there is no proper evidence in the record. We are inclined to the opinion, therefore, that the original decree for partition and rents, might be reversed upon the general allegation that upon the pleadings and evidence, it is contrary to equity; and this is certainly so with regard to the decree for rents, which derives no aid from the answer.

But if the decree could not be reversed to any extent on the general assignment of error, we are of opinion that it is reversable on the ground that Mrs. Warder was not made a party. It is understood to be a rule of practice in equity, that the husband cannot, in that Court, assert an interest in right of his wife, without making her a party, if she be alive; and an adherence to this rule would seem to have been peculiarly requisite in the present case, since it not only involves the appropriation to the husband of an interest claimed in right of the wife, but involves also, some hazard, if not actual injury to other interests of the wife. Again, if the husband may defeat the executors sale in virtue and to the extent of his interest as husband in the title of his wife, it could scarcely be denied that upon the death of the husband or other termination of the marriage, the wife or her heirs, might defeat it entirely, and she ought to be bound by the division assigning her interest to her husband, and ought, therefore, to be a party to it. In this respect the defendants, as well as she herself, had an interest in her being a party, and had, therefore, a right to assign for error the omission to bring her before the Court. But there are

RINGO, et al.
vs
WARDER, &c.

The husband cannot, assert an interest in right of his wife in a Court of Equity, without making her a party.

other necessary parties who were not brought before the Court. One who was made a defendant to the bill on the allegation that he had acquired the interest of some of the devisees of Nelly Moss, was not served with process and did not appear. And moreover, as the complainant founds his claim upon the principle that the title to the entire tract descended from Moses Moss to his heirs, of whom Nelly Moss was but one, it is obvious that her devisees and all claiming under her, represent but one fifth of the title under which the partition is claimed, and not only Mrs. Warder but the three other heirs of Moses Moss, should have been parties, in order that the question of title and possession might be settled.

The failure to make the necessary parties in the original suit, held to be a sufficient ground of reversal on bill of review.

The defendants in the decree have not, in their bill of review, relied specifically upon the omission to make these parties defendants, except as to Mrs. Warder. But we are of opinion that the omission to make her a party is a sufficient ground of reversal, and that for this error, specifically assigned, the entire decree should have been reversed, and a decree rendered according to the merits of the whole case, as disclosed in the original suit, and upon the subsequent bills and cross bills.

As already intimated, we are of opinion that Warder had no equity upon the case presented, against the parties claiming under Nelly Moss, even if the fact of the general mistake as to the power of the executor, set forth in his answer to the bill of review, be taken as if alledged in his own bill for partition and rents, and as his possession appears to have been wrongfully obtained, his bill should have been dismissed, but without prejudice, so far as the partition is concerned. Whether the complainants in the original and cross bills are entitled to any further relief than that of reversing the former decree and dismissing Warder's bill, is a more serious question.

It is not shown that Warder was ignorant of any fact upon which the right of himself and wife, or the power of the executor depended. He was bound to know the contents of the will of Moses Moss, and he should have been advised of its legal effect. The sale of the land was not made by a stranger for his own benefit, and under assertion of title in himself, but by the executor, and

for the benefit of the heirs or devisees of the former own-er, and claiming power to sell under the will. The heirs acquiesce in this claim and in the sale made under it. The purchaser (one of the heirs) confiding in the power claimed and in the general acquiescence, pays a fair price which the heirs recieve, and of which the proper proportion was appropriated to the benefit of Warder and wife, and the whole or a part of that portion invested in land for the use of the wife, in which Warder for many years acquiesced. Can he when, after the separation of himself and wife, he professes to have discovered that the executor has no power to sell, defeat the sale to the extent of his interest, on the ground that when it was made he erroneously supposed the executor had pow-er under the will? Who can say with absolute cer-tainty, that he was actually in error on the subject, or that if he had not been in error he would have opposed the sale? His acquiescence in the sale cannot be said to have been based exclusively on the erroneous supposi-tion that the executor had power to make it, for the bene-fit was received directly by his wife, and indirectly by himself; and the arrangement by which a part of it was appropriated to the separate use of his wife, was rendered proper, by the circumstances, even if the direc-tion of the will to that effect did not apply, and it might have been assented to by him, if he had been under no mistake. Besides, as the wife was entitled under the will, to other money besides the proceeds of the land, it cannot be assumed that Warder did not himself receive for his own use a portion of the price.

The equity against him arises, from the fact that he knew that the purchaser relied upon the title to be con-veyed by the executor, and under that reliance paid her money, that with this knowledge he stood by, without ques-tioning the power or asserting any opposing claim, and that he and his wife received the benefit of the sale. The Court of equity will not permit a man knowingly, though but passively, to encourage another to lay out money under an erroneous opinion of title, and after-wards to dispute or withhold the title: *Dorn* vs *Spencer*, (7 *Vesey*, 235;) and in the case of *Hundsley* vs *Chey-*

Equity will not permit one knowingly, tho' but passively, to encourage an-other to lay out his money under an erroneous o-pinion of title, and afterwards to withhold the title: (7 *Vesey*, 235; 2 *Vern.* 150.)

*ney,* (2 *Vern.* 150,) a tenant in tail was held bound to make good the undertaking of her son or grand-son, in a treaty and agreement of marriage, to which she was privy, (and as stated in one report to which she was a subscribing witness,) on the ground that she did not mention that she had more than a life estate; and other cases similar in principle, are there referred to. The principle of these cases is, that the party against whom the relief was granted, was guilty of bad faith in not disclosing his title when he should have done it, and in afterwards attempting to defeat the transaction which was founded upon his silence. And the question now is, whether the principle applies with full force to the case where the party against whom relief is sought, though presumed to have known the facts on which his right is founded, may also be presumed to have been in fact ignorant of his right, and whether under such circumstances, his silence at the time will so affect his conscience as in the consideration of a Court of Equity, to preclude him from asserting his right when afterwards discovered. In the cases referred to, the party acquiring, received no benefit individually, from the transaction, but may be assumed not to have been ignorant of his own right, and to have knowingly abstained from asserting it. In the present case the party did receive some benefit, but was ignorant of his right, and therefore, cannot be said to have knowingly concealed it; and the facts on which it was founded, were as well known to the purchaser and all others concerned, as to himself.

Upon this analysis and comparison of the cases, we are of opinion that the one now before us is distinguishable in principle, from the others referred to, on the ground that the mere failure to assert a title of which Warder was ignorant at the time, could not affect his conscience so as to bind him to the sale, although under a like ignorance, he received a part of the benefit of it, and that he is not bound now to release or convey his title, though he is bound in equity to the extent at least of the benefit received by him from the sale, to compensate for the loss which he may occasion by defeating it. If he were out of possession, the Court might not only

*—But a mere failure to assert title, of which the party was ignorant at the time of sale to another, will not affect the conscience of the party thus passive and bind him.*

refuse its aid to gain it, but might restrain him from the full benefit of his legal remedy, until he should make compensation. But as the Court cannot decree the title from him, we do not perceive that it can deprive him of the possession, which if wrongfully taken under a judgment in ejectment, afterwards reversed, may be restored on motion, by the Court of Law, but cannot be restored by the Court of Equity, unless the title itself could be reached in that Court. And if the complainants, though out of possession, might come into equity to be compensated for their loss and for an account, the bill is not framed with that view, and does not entitle them to that relief.

Upon the whole case, therefore, the devisees of Nelly Moss, and those claiming under them, have not shown themselves to be at present entitled to any relief beyond the reversal of Warder's decree against them for partition and rents, and the dismissal of his bill; and their bills and cross bills, so far as they pray for any additional relief, should have been dismissed without prejudice.

Wherefore, the decree is reversed and the cause remanded, with directions to reverse the decree of Warder for partition and rents, and to dismiss his bill without prejudice, and also to dismiss, without prejudice, the bills and cross bills of the other parties, so far as they pray for relief beyond the review and reversal of the decree against them.

*Hord* for plaintiffs: *Beatty* for defendants.